DANIEL P. SMITH, Respondent, v. THE BUFFALO, ROCHESTER AND  72  545 | 148a 727.
PITTSBURGH RAILROAD COMPANY, Appellant.

*Railroads — personal injury to a switchman — use of an ordinary engine in place of a switching engine in coupling cars — negligence.*

A railroad switchman, employed in a track yard where there were two switching engines provided with extra appliances for the protection of switchmen when engaged in coupling cars, went on duty in the evening and commenced switching with one of the regular switching engines, but during the night this engine was withdrawn for repairs, without his knowledge, and an ordinary road freight engine, which was not furnished with such appliances for the protection of switchmen, was substituted in its place. The switchman was directed by his foreman to couple this engine to a passenger car having a Miller coupler;' it was dusk at the time ; he attempted to make the coupling, was caught between the car and the engine, and was injured. This occasion was the first one on which he had attempted a coupling with this engine.

In an action brought against the railroad company to recover damages for the injury,

*Held*, that it was inexcusable negligence on the part of the defendant to use such an unguarded engine for such a purpose, especially in the night-time;

That it was the defendant's duty to provide the switchman with every reasonable and well-known safeguard to prevent injury to his person;

That, under the circumstances, the question of contributory negligence was one for the jury to determine ;

And, hence, that a verdict in favor of the plaintiff should not be disturbed.

APPEAL by the defendant, the Buffalo, Rochester and Pittsburgh Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of Steuben county on the 12th day of January, 1893, upon a verdict rendered at the Steuben Circuit, and also from an order of the Supreme Court, entered in said clerk's office on the 12th day of January, 1893, denying the defendant's motion for a new trial upon the minutes.

*Henry G. Danforth*, for the appellant.

*E. F. Babcock*, for the respondent.

LEWIS, J. :

This action was commenced for the recovery of damages for personal injuries sustained by the plaintiff while employed by the defendant as a switchman in defendant's yards at Bradford, Pa.

The plaintiff had been at work for the defendant in the capacity of switchman for nine days prior to the accident.

He had prior thereto been employed by railroads in various capacities, but never before as a switchman.

The defendant had in its yards two switching engines for doing that work. They were provided with appliances for the protection of switchmen when engaged in coupling cars.

·In front of these switch engines, and running across the front thereof, was a footboard about twelve inches wide upon which the switchman could stand when making couplings.

They were also provided with a projection in front called a mouth organ or drawhead; the front end was large and had three openings to receive a link.

The drawhead acted in a measure to prevent the engine and the car when being coupled coming near enough to each other to injure the switchman.

. On the night of the accident the plaintiff went on duty at six-thirty P. M., and commenced switching with a regular switch engine, but early in the night, without his knowledge, the switch engine was sent to the shop for repairs and a regular road freight engine was substituted for use in the yard.

It was a heavy eight-driving-wheel engine, and was not provided with any appliances for the protection of the switchman while making couplings. It had the usual pilot or cowcatcher which extended out about five feet in front and coming to a point.

The coupling appliance consisted of an iron drawhead, commonly known as a bull-nose, which extended from the face of the pilot beam a distance of two and a half feet. The face of the bull-nose was twelve inches long and ten and one-eighth inches broad. The opening in the head of the bull-nose was five inches square; this was to receive a link.

There was a step or foot-rest on the pilot fifteen inches long projecting five inches from the outside of the slats composing the pilot. The end of this step was thirteen inches from the end of the pilot.

The plaintiff was directed by the yard conductor or head switchman to couple the engine to a passenger car; it was dark at the time. The passenger car was provided with what is known as a

Miller coupling, but it had neither bumpers, safety blocks nor deadwoods.

These Miller drawheads extend out from the platform of the car about a foot, with a face width of about eight inches, with an appliance to receive a link. Attached to it is a strong spring which gives a play to the drawhead to the left of about three and one-half inches.

Near the front end of it is a clutch or jaw, and when two of these drawheads come together, owing to this play they pass each other until the clutches are opposite, and then close by springs automatically.

In attempting to effect the coupling on the occasion of the accident the plaintiff stepped with his left foot upon the ledge or step described, and balancing his body upon that foot, the other foot having nothing to rest upon, with his lantern upon his arm, he took the link attached to the drawhead of the engine in his left hand and with a pin in his right hand attempted to insert the link into the Miller coupling and secure it thereto by dropping the iron pin into the link.

He failed to insert the link and the two drawheads came together, passed each other and the drawhead of the passenger car caught plaintiff's left leg between it and some part of the pilot and crushed it, injuring it so that it necessitated amputation.

The accident occurred before daylight in the morning. The plaintiff attempted to make the coupling in the ordinary manner, but obviously with the appliances furnished him it was a hazardous and dangerous thing to do.

There was an entire absence of any safeguards to protect the plaintiff's person in case of a failure to effect the coupling.

Standing as he was required to do, upon one foot, with the lantern upon his arm, with both hands engaged, it is not surprising that he failed to secure the link in the passenger car.

It was, we think, inexcusable negligence on the part of the defendant to use such an unguarded and unprotected engine for such a purpose, especially in the night-time.

In view of the terrible consequence likely to result to the plaintiff if the slightest mishap should occur, it was the defendant's duty to provide him with every reasonable and well-known safeguard to prevent injury to his person.

This it failed to do and the jury very properly found the defendant was guilty of negligence causing the injury to the plaintiff.

The evidence tended to show that there was in common use and had been for many years upon engines and cars, bumpers and other appliances for the protection of men when engaged in coupling cars.

It was the first time the plaintiff had attempted to effect a coupling with this engine. He was directed by his foreman to do the work. He had no time or opportunity to investigate the engine and car to ascertain if there were appliances for his protection.

The exigencies of the business required prompt action on his part, and it became a question for the jury to determine from the evidence whether the plaintiff was guilty of negligence contributing to his injuries.

While the plaintiff may have known in a general way that the engine was not provided with deadwoods, he had a right to assume that the defendant would not require him to use an appliance without some safeguard for his protection.

The defendant has no cause to complain of the charge to the jury.

The law of the case, taking the entire charge together, was carefully and correctly stated.

We find no reason for disturbing the judgment.

The judgment and order appealed from should be affirmed.

DWIGHT, P. J., and HAIGHT, J., concurred.

Judgment and order appealed from affirmed.